## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

HAROLD J. THREET,           )
                                )
               Petitioner,      )
                                )
v.                          )     Case No. 12-CV-00152-GKF-FHM
                                )
JANET DOWLING,[1] Warden,    )
                                )
               Respondent.     )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Harold Threet, a state prisoner appearing pro se. Petitioner separately filed several exhibits in support (Dkt. # 2). Respondent filed a response (Dkt. # 8), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. # 9). Petitioner filed a reply (Dkt. # 15). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### *BACKGROUND*

On December 7, 2007, Brenda Farley awoke to find the north side of her bedroom on fire. (Dkt. # 9-7, Tr. Vol. III at 509). Farley ran from the room. She and a man also living in the home, Arthur Compos, both escaped unharmed. Id. at 509-10. After speaking with Farley, officers located her former boyfriend, Petitioner, at a bus station. (Dkt. # 9-6, Tr. Vol. II at 311). An officer then noticed Petitioner smelled of gasoline. Id. at 328. A K-9 unit was called to the bus station, and the

---

[1]      Petitioner is currently incarcerated at the Dick Conner Correctional Center. The proper party respondent is the current warden of the facility, Janet Dowling. Therefore, pursuant to Rule 2(a), Rules Governing Section 2254 Cases, and Rule 25(d)(1), Federal Rules of Civil Procedure, Janet Dowling is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

dog alerted to items of Petitioner's clothing, indicating the presence of an ignitable liquid. Id. at 336, 349-51.

Based on those events, Petitioner was charged, by Information filed in Tulsa County District Court, Case No. CF-2007-6477, with Arson - First Degree, After Former Conviction of Two or More Felonies. (Dkt. # 9-8, O.R. at 18-20). A jury found Petitioner guilty and recommended a sentence of twenty-five (25) years imprisonment. (Dkt. # 9-7, Tr. Vol. III at 689). The trial judge sentenced Petitioner in accordance with the jury's recommendation. (Dkt. # 9-4, Tr. Sent. Hr'g at 3). Attorney David Phillips represented Petitioner at trial. (Dkt. # 9-5, Tr. Vol. I at 1).

Represented by attorney Curtis M. Allen, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). (Dkt. # 8-1). Petitioner raised two (2) propositions of error, as follows:

| | |
|---|---|
| Proposition I: | The Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution guarantee the right to present a defense and to confront one's accuser. The judge erred when he forbade defendant from inquiring of the prosecutrix[2] her previous use of arson to "defend" herself. |
| Proposition II: | 12 O.S. 2404 (B) permits the admission of prior bad acts that are probative of guilt or innocence. While the court was within its discretion in admitting some evidence of prior bad acts, the court abused its discretion when it failed to control the state's efforts to bootstrap improper and prejudicial prior bad acts. |

Id. In addition to the direct appeal brief, Petitioner filed a "'Pro Se' Brief in Support of Appellant Brief-n-Chief [sic]." (Dkt. # 8-2). Petitioner raised three (3) additional propositions of error, as follows:

---

[2] Although the archaic term "prosecutrix" most often referred to a female prosecutor, it also may refer to a female complainant in a criminal case. See BLACK'S LAW DICTIONARY 1416 (10th ed. 2014).

| | |
|---|---|
| Proposition I: | The Appellant received ineffective assistance of trial counsel in violation of his due process rights to counsel and a fair and impartial trial as guaranteed by Art. II of §§ 7 and 20 of the OK Const. and the 6th and 14th Amends. to the United States Constitution. |
| Proposition II: | The trial court committed reversible error when it failed to make inquiry into [a] possible conflict of interest that existed between Appellant and trial counsel in violation of the 6th and 14th Amenments [sic] to the U.S. Const. |
| Proposition III: | The prosecutor committed prosecutorial misconduct in violation of Appellant's right to due process and a fair trial guaranteed by 5th and 14th Amendments to the United States Constitution. |

Id. In an unpublished opinion, filed July 9, 2010, in Case No. F-2009-257, the OCCA denied relief on all five (5) propositions of error and affirmed the Judgment and Sentence of the district court. (Dkt. # 8-4).

On July 19, 2011, Petitioner filed an application for post-conviction relief. (Dkt. # 8-6). Petitioner raised five (5) propositions of error. Id. On August 23, 2011, the trial court denied the application. See Dkt. # 8-8 at 1. Petitioner did not appeal. Id.

On November 28, 2011, Petitioner filed a second application for post-conviction relief. (Dkt. # 8-7). Petitioner raised three (3) propositions of error, as follows:

| | |
|---|---|
| Proposition I: | The ex parte summary disposition of Petitioner's original application was inappropriate and prejudicial to Petitioner because the district attorney did not include any record to show the court that Petitioner was not deprived of the effective assistance of appellate and trial counsel and the court's denial did not allow for sufficient amount of time to amend or reply in violation of district court rules and Petitioner's right to due process. |
| Proposition II: | A fundamental miscarriage of justice occurred and Petitioner [was] deprived of ineffective assistance of appellate and trial counsel when appellate counsel knowingly and intentionally failed to argue in Petitioner's direct appeal that Petitioner was illegally arrested without a warrant and without probable cause in violation of Petitioner's 6[th] |

and 14th Amendment right to effective assistance of trial and appellate counsel as guaranteed by the United States Constitution.

Proposition III:    A fundamental miscarriage of justice occurred and Petitioner [was] deprived of the effective assistance of trial counsel because trial counsel knowingly and intentionally failed to properly secure attendance of and utilize testimony of crucial defense alibi witnesses to show Petitioner was actually innocent in violation of the 6th Amendment of the United States Constitution.

Id. The trial court denied the application. See Dkt. # 8-8 at 1. On March 1, 2012, in Case No. PC-2011-1037, the OCCA affirmed the trial court's denial of post-conviction relief. (Dkt. # 8-8).

Petitioner subsequently commenced this federal action. He raises six (6) grounds of error:

Ground I:    The 5th, 6th, and 14th Amends. to the U.S. Const. Guarantee the right to present a defense and to confront and cross-exam [sic] one's accuser. The Judge errored [sic] when he forbade defendant from inquiring of the prosecutrix her previous use of arson to "defend" herself from criminal behavior.

Ground II:    12 O.S. 2404(B) permits the admission of prior bad acts that are probative of guilt or innocence. While the court was within it's [sic] discretion in admitting some evidence of prior bad acts, the court abused it's [sic] decretion [sic] when it failed to control the state's efforts to bootstrap improper and prejudicial prior bad acts, denying Petitioner's right to due process of the law, under the 14th Amendment of the United States Constitution.

Ground III:    Petitioner argues that his guaranteed rights under the 6th and 14th Amends. of the U.S. Const. of due process were violated due to ineffective assistance of trial counsel and resulted in an unfair trial. The ineffectiveness of Petitioner's trial counsel caused substantial injurious effect and had prejudiced the Petitioner and had a negative effect on the outcome of the trial. Had trial counsel been effective a possiable [sic] different outcome would have resulted.

Ground IV:    Conflict of interest between Petitioner and trial counsel in violation of the 6th and 14th Amends. of the U.S. Const.

Ground V:    The exparte [sic] summary disposition of Petitioner's original appl[ication] was inappropriate and prejudicial to Petitioner because the district attorney [sic] did not include any record to show the court

4

that Petitioner was not deprived of the effective assistance of appellate and trial counsel an[d] the court's denial did not allow for sufficent [sic] amount of time to amend or reply in violation of district court rules a[nd] Petitioner's right to due process. See Title 22 O.S. Supp. Sec. 1083 and 1084.

Ground VI: A fundamental miscarriage of justice occured [sic] and Petitioner deprived of effective assistance of appellant [sic] and trial counsel when appellate [sic] counsel knowingly and intelligently failed to argue in Petitioner's direct appeal that Petitioner was illegally arrested without a warrant and without probable cause in violation of Petitioner's 6th and 14th Amend. right to effective assistance of trial and appellant [sic] counsel as guaranteed by the U.S. Constitution.

(Dkt. # 1).

In response to the petition, Respondent argues Grounds I and II are matters of state law not cognizable on habeas review; the OCCA's rulings on Grounds III and IV were not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court; and Grounds V and VI are procedurally barred. (Dkt. # 8).

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). With the exception of one claim raised within Ground III, Petitioner presented Grounds I-VI to the OCCA on direct or post-conviction appeal and the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied as to those claims. One claim of ineffective assistance of counsel in Ground III has not been presented to the state courts. However, in light of the procedural posture of Petitioner's case, the Court finds an absence of available state corrective process for that claim, see 28 U.S.C. §

2254(b)(1)(B), and the claim is not barred by the exhaustion requirement. Nonetheless, as discussed in Part C below, habeas corpus relief on that claim is denied as procedurally barred.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

6

disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87 (2011));

see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.

Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal

courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v.

Landrigan, 550 U.S. 465, 474 (2007). Further, the "determination of a factual issue made by a State

court shall be presumed to be correct. The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Grounds I-IV on direct appeal. Therefore, the § 2254(d)

standard applies to this Court's analysis of those grounds.

### 1. Exclusion of evidence concerning a previous arson committed by Brenda Farley and restriction of cross-examination (Ground I)

In Ground I, Petitioner argues his Fifth, Sixth, and Fourteenth Amendment rights were

violated when the trial judge "forbade [Petitioner] from inquiring of the prosecutrix her previous use

of arson to 'defend' herself from criminal behavior." (Dkt. # 1 at 5). Prior to Farley taking the stand

at trial, the state filed a motion in limine seeking to prevent the defense from questioning Farley

about an arson she admitted committing "in the mid '90s." (Dkt. # 9-6, Vol. II at 274). The defense

argued evidence of the previous arson was relevant to the "question of who started this fire." Id. at

275. Specifically, the defense sought to demonstrate "who would have the opportunity and

knowledge to do this, and certainly Ms. Farley . . . [had] knowledge and [was] able to do this." Id.

After hearing argument of counsel, the trial judge held,

> [I]f your defense is that she started the fire or could have started the fire, and she denies that she knows how to start a fire, then why don't you approach the bench and maybe I'll consider that. But I think as far as just launching in to that, I think I'll sustain the motion in limine, and we'll see how the cross-examination goes.

Id. at 277. During Farley's testimony, defense counsel attempted to cross-examine Farley as instructed by the trial judge:

| | |
|---|---|
| DEFENSE COUNSEL: | Ma'am, what do you know about starting fires? |
| . . . | |
| WITNESS FARLEY: | I can start a fire. |
| DEFENSE COUNSEL: | You can start a fire? |
| WITNESS FARLEY: | Yes. |
| DEFENSE COUNSEL: | Have you started fires before–? |
| PROSECUTOR: | Objection. Asked and answered. |
| TRIAL JUDGE: | Sustained. |
| DEFENSE COUNSEL: | You can start a fire? |
| WITNESS FARLEY: | Uh-huh. |
| DEFENSE COUNSEL: | Intentional? |
| PROSECUTOR: | I believe the objection was sustained. |
| TRIAL JUDGE: | Next question. |
| . . . | |
| DEFENSE COUNSEL: | Now, you say that you did not start this fire? |
| WITNESS FARLEY: | No. |
| . . . | |
| DEFENSE COUNSEL: | Have you started other fires? |

PROSECUTOR:                Your Honor, may we approach?

TRIAL JUDGE:          No.  The objection is sustained, if you're objecting.

Id. at 542-43.  The OCCA denied Petitioner's claim on direct appeal, holding,

> The United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.  *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727, 164 L.Ed.2d 503 (2006).  This right is subject to, rather than independent from, the established rules of evidence.  As the Supreme Court said in *Holmes*,
>
>> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, *well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.*
>
> 547 U.S. at 326-27, 126 S. Ct. at 1732-33 (emphasis added; internal citations omitted).  Our own cases provide that a defendant may show, "by any legal evidence, that some other person committed the crime with which he is charged, and that he is innocent of any participation in it."  *Irvin v. State*, 11 Okl. Cr. 301, 146 P. 453 (1915).  However, the proposed evidence must tend to connect the other person with the commission of the crime charged.  *Gore v. State*, 2005 OK CR 14, ¶ 13, 119 P.3d 1268, 1273.  Evidence that has no further effect than to cast a bare suspicion upon another is inadmissible.  *Id.*
> . . .
> We find the district court in this case gave proper consideration to the facts and law, concluding that the evidence here did nothing more than connect the victim with a potential crime more than a decade earlier.  This evidence was properly excluded.

(Dkt. # 8-4 at 2-3).  Respondent argues Petitioner's claim raised in Ground I is a matter of state law not cognizable on federal habeas review, and that the exclusion of this evidence did not render Petitioner's trial fundamentally unfair.  (Dkt. # 8 at 6).

To the extent Petitioner's claim challenges the trial judge's exclusion of this evidence under state law,[3] federal habeas corpus relief is not available. "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68.

In both his habeas petition and his direct appeal brief to the OCCA, Petitioner also contends the trial judge's ruling violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the Constitution. (Dkt. # 1 at 5-6). Specifically, Petitioner argues the trial judge's ruling violated his constitutional rights to present a complete defense and confront witnesses against him. (Dkt. # 8-1 at 5-8). In resolving Petitioner's claim on direct appeal, the OCCA cited to both state and Supreme Court case law. See Dkt. # 8-4 at 2-3. In support of his constitutional claim, Petitioner argues the restriction on his cross-examination of Farley hindered his "trial strategy," which was to show Farley had the "motive to lie" and that "Farley openly admitted to comitting [sic] arson under similar circumstances." (Dkt. # 1 at 7-8).

While "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," this discretion is not absolute. Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)). One limitation to this "broad latitude" is a defendant's right to present a complete defense. As the Supreme Court has explained, "[w]hether rooted directly in the Due Process Clause of the

---

[3]     In his petition, Petitioner argues, "[t]he court's ruling was [an] unreasonable application of state rules of the evidence code and unreasonable [sic] applied govening [sic] legal principle to the facts of the Petitioner's case." (Dkt. # 1 at 6).

Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Id. (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotation marks omitted)). To protect this right, "the Constitution [ ] prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." Id. at 326. However, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is out-weighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id.

In Holmes, the Supreme Court specifically addressed "rules [that] regulat[e] the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged." Id. at 327. The Supreme Court noted rules that allow exclusion of evidence that does not "sufficiently connect the other person to the crime, as for example, where the evidence is speculative or remote," are "widely accepted." Id. Significantly, the Supreme Court cited several cases supporting this type of rule, including one decided by the OCCA. Id. at 327 (citing Gore v. State, 119 P.3d 1268, 1272-76 (Okla. Crim. App. 2005)). The OCCA referenced both Gore and Holmes in its Summary Opinion denying Petitioner's claim. See Dkt. # 8-4 at 2.

In Petitioner's case, the trial judge excluded the evidence after determining it was "too remote," as Farley committed the arson over ten (10) years prior to trial, and that the probative value of the evidence was outweighed by unfair prejudice. (Dkt. # 9-7, Tr. Vol. III at 549). That ruling aligns with the Supreme Court's rationale in Holmes, and did not violate Petitioner's right to present a complete defense. Petitioner has failed to show the OCCA's denial of his claim was contrary to, or an unreasonable application of, federal law as established by the Supreme Court.

As previously stated, Petitioner also argues that the trial judge's exclusion of evidence violated his right to confront witnesses against him. "Included in a defendant's Sixth Amendment right to confront witnesses against him is the right to cross-examine those witnesses called by other parties." United States v. Helmstetter, 479 F.3d 750, 755 (10th Cir. 2007). However, a defendant's right to cross-examine witnesses "is not an absolute or unlimited right." United States v. Gault, 141 F.3d 1399, 1403 (10th Cir. 1998). "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." Hooks v. Workman, 689 F.3d 1148, 1177 (10th Cir. 2012) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (internal quotation marks omitted)).

The importance of cross-examination focuses on the defendant's ability to impeach, or discredit the witness. Id. at 1177-78. "Cross-examination is the principal means by which the *believability* of a witness and the truth of his testimony are tested." Id. (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974). The Confrontation Clause "secures far more than the right to challenge the accuracy of specific aspects of a witness's testimony." Id. at 1178. The Clause entitles a defendant to expose the jury to facts from which they "could appropriately draw inferences relating to the reliability of the witness." Id. (quoting Kentucky v. Stincer, 482 U.S. 730, 738 (1987) (internal quotation marks omitted)). Similar

Petitioner wished to cross-examine Farley about an arson she committed over ten (10) years before the trial. While arguing against the state's motion in limine concerning this evidence, defense counsel conceded the proposed questioning would not go to Farley's credibility, but instead would

show Farley had the "knowledge" required to set the fire.  (Dkt. # 9-6, Tr. Vol. II at 274-75).  The

trial judge agreed with the state's argument, and defense counsel's concession, that the evidence did

not "concern the witness's character for truthfulness or untruthfulness."  Id. at 279.  While the trial

judge excluded evidence of the previous arson, he permitted defense counsel to inquire about

Farley's knowledge of fire setting and to ask the witness if she set the fire.  As the proposed

questioning about the previous arson did not concern Farley's credibility, and because the trial judge

acted within his discretion to limit Petitioner's cross-examination, Petitioner has failed to show the

OCCA's denial of his claim was contrary to, or an unreasonable application of, federal law.

Petitioner's request for habeas relief on Ground I shall be denied.

### 2.     Admission of other crimes evidence (Ground II)

In Ground II, Petitioner argues "[t]he District Court['s] allowance of State's Exhibits 37, 38,

39 and 40[4] and the testimony of State's witness Ms. Farley concerning the details of a previous

domestic [assault and battery] were cumulative, irrelevant, highly prejudicial, and improper

aggravation evidence."  (Dkt. # 1 at 11).  Petitioner asserts the admission of this evidence violated

his "constitutional right to due process and a fair trial."  Id.  At trial, the state was permitted to admit

evidence of Petitioner's conviction for domestic assault and battery (A & B) against Farley.  See

Dkt. # 9-5, Tr. Vol. I at 189-90.  The evidence presented at trial established that, as Petitioner was

leaving the home after he was arrested for domestic A & B, he "loudly" stated to Farley and officers

---

[4]     Exhibits 37 and 38 were filed of record in a domestic A & B case against Petitioner in Tulsa
County District Court, Case No. CM-2007-4749. Exhibit 37 is a certified copy of the
redacted "Findings of Fact and Acceptance of Plea" form, and Exhibit 38 is a certified copy
of the Judgment and Sentence. See Dkt. # 9-7, Tr. Vol. III at 489, 491. Exhibits 39 and 40
were documents from a protective order case Farley filed against Petitioner, Tulsa County
District Court Case No. PO-2007-2829. Exhibit 39 is a certified copy of the Protective
Order entered against Petitioner, and Exhibit 40 is a certified copy of the Temporary
Protective Order. Id. at 492-93.

standing near her, "I'll be out shortly and I'll come back to finish this." (Dkt. # 9-6, Tr. Vol. II at

438). Petitioner served his sentence for the domestic A & B and was released from custody on

December 7, 2007. See Dkt. # 9-7, Tr. Vol. III at 484. The arson occurred during the overnight

hours of December 7, 2007 into December 8, 2007. See Dkt. # 9-5, Tr. Vol. I at 209. The OCCA

addressed Petitioner's claim as follows:

> Appellant's Proposition Two argues that the admission of other crimes evidence
> denied him a fair trial. Appellant seems to acknowledge that evidence of his other
> crimes, wrongs, or bad acts against the victim, including domestic assault and
> battery, violation of a protection order, and threats of violence, were admissible to
> show his motive and intent to commit this crime. Upon further review of the
> admission of the evidence of other crimes, we find that the evidence was properly
> admitted and not unfairly prejudicial. *Grigsby v. State*, 1972 OK CR 122, 496 P.2d
> 1188, 1194 (prior assaults and threats admissible to prove motive and common
> scheme to injure victim in arson). Proposition Two requires no relief.

(Dkt. # 8-4 at 3). Respondent asserts Petitioner's claim is a matter of state law not cognizable on

federal habeas review, and that the admission of the other crimes evidence did not render

Petitioner's trial fundamentally unfair. (Dkt. # 8 at 6-8).

Federal habeas relief is not permitted for state law errors. See Rose v. Hodges, 423 U.S. 19,

22 (1975). It is well established that federal courts "will not disturb a state court's admission of

evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly

outweighed by the prejudice flowing from its admission that the admission denies [the petitioner]

due process of law." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002) (quoting Duvall v.

Reynolds, 139 F.3d 768, 787 (10th Cir. 1998)). Therefore, this Court must determine whether, when

"considered in light of the entire record, [the admission of other crimes evidence] resulted in a

fundamentally unfair trial." Id. This standard "will be satisfied only if the 'probative value of [the

challenged] evidence is . . . greatly outweighed by the prejudice flowing from its admission . . . ." Welch v. Sirmons, 451 F.3d 675 (10th Cir. 2006) (quoting Knighton, 293 F.2d at 1171).

Petitioner argues that the admission of this evidence denied "Petitioner of his constitutional right to due process and a fair trial," and the "presentation of aggravating evidence [sic] before the jury, whether in [the] form of [an] affidavit, exhibit, testimony, or representation of any kind, verbal or written is undoubtedly a constitutional violation." (Dkt. # 1 at 11). Petitioner argues that while the trial court ruled "the details of the domestic A&B inadmissible," the "state backdoored [sic] the details into evidence, by the use of a[n] evidentiary harpoon." Id. at 13. Petitioner asserts this evidence was "highly prejudicial and harmful to the point Petitioner was on again on trial [sic] for the domestic A&B and not arson. There was no way the jury got passed [sic] this emotional testimony and could give a fair vertict [sic]." Id. at 14.

Prior to the state calling its first witness, the trial court heard argument on the state's motion to admit evidence of the previous domestic A & B pursuant to Burks v. State, 594 P.2d 771 (Okla. Crim. App. 1979). See Dkt. # 9-5, Tr. Vol. I at 173. Defense counsel conceded that evidence of both the protective order and Petitioner's guilty plea to the domestic A & B could properly be admitted at Petitioner's trial. Id. at 183. The trial judge agreed, and granted the state's motion as to evidence of the guilty plea and the protective order. Id. at 189. However, the trial judge placed limitations on the evidence that could be offered. First, the trial judge excluded photographs of Farley's injuries because admission of this evidence would be "far more prejudicial than probative." Id. Then, just prior to Farley taking the stand, the trial court emphasized it would only allow "some limited testimony about the prior incident." (Dkt. # 9-7, Tr. Vol. III at 478). After some discussion, the state agreed to refrain from questioning Farley about the details of the domestic A & B,

including the allegation that Petitioner struck Farley with a baseball bat. However, the state asserted it would generally question Farley about the incident, including, "did he put his hands on you and . . . did he hit you in the face." Id. at 480. The trial judge then concluded, "I think if we do that then the Court is satisfied with those stipulations and we don't get too much into detail. Obviously, again, I agree with [defense counsel], we don't want to be retrying the A & B. But I think there is some relevance here, so I will allow that, and I will give a limiting instruction." Id. at 481. Before Farley testified, the trial judge instructed the jury as follows:

> Ladies and gentlemen, we're now going to hear from the alleged victim in this case, and you're going to hear some testimony that I need to give you an instruction, what's called a limiting instruction, on how to evaluate this evidence. And this is one of the reasons we've had some delays in the trial, we've been discussing how to handle this evidence.
> I'm going to allow the State to get into some testimony about a previous incident that involved another crime, and you'll hear testimony about that. You're instructed that the defendant is not on trial for that crime. And you'll hear testimony that there's been a plea of guilty in this other incident. And so you're instructed not to consider this evidence for evidence of guilt on this case, rather than [sic] you're only to consider this evidence for a proper purpose, which would be – which would be motive, intent, absence of mistake, or accident, identity, or a common scheme or plan.
> And the lawyers can – I'll give you another instruction at the end of the case about that, and then the lawyers can argue about how to evaluate that evidence. But you're instructed not to consider this evidence of the other incident as proof of guilt on this case, but only for those stated purposes that I gave you.

Id. at 482-83. During Farley's testimony, the state questioned her, generally, about the previous domestic A & B. See id. at 487-90.

Upon review of the record, the Court concludes that Petitioner was not denied a fundamentally fair trial as a result of the trial court's admission of the other crimes evidence. As detailed above, the trial judge carefully considered the proposed other crimes evidence and placed several limitations on its admission. At trial, the state refrained from asking questions about the

specifics of the incident, instead only eliciting the general facts the trial judge previously ruled admissible.[5] Significantly, Petitioner stipulated to the admission of his guilty plea to the domestic A & B charge. Before Farley testified, the state read the following stipulation into the record: "the State and the Defendant stipulate to the fact that Harold Threet was released from the Tulsa County Jail December 7th, 2007, at 11:42 a.m., after having completed his sentencing in Case CM-07-4749, a Domestic Assault and Battery." Id. at 484. While the admission of Exhibits 37 and 38 may have been cumulative, it did not render Petitioner's trial fundamentally unfair. Similarly, Farley's testimony about the incident and the admission of Exhibits 39 and 40 did not render Petitioner's trial fundamentally unfair.

Petitioner has failed to demonstrate that the probative value of the domestic A & B evidence was "greatly outweighed by the prejudice flowing from its admission." See Welch, 451 F.3d at 688 (quoting Knighton, 293 F.3d at 1171). Therefore, this Court cannot find that the admission of the other crimes evidence rendered Petitioner's trial fundamentally unfair, or that the OCCA's conclusion was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Habeas corpus relief shall be denied on Petitioner's Ground II.

### 3. Alleged Ineffective Assistance of Trial Counsel (Ground III)

In Ground III, Petitioner claims he received ineffective assistance of trial counsel. (Dkt. # 1 at 15). Petitioner alleges trial counsel provided ineffective assistance in failing to (1) properly

---

[5]     Petitioner asserts in his petition that after Farley testified to inadmissible details of the incident, "[t]he trial judge dismissed the jury and there was [sic] arguements [sic] concerning the introduction of the inadmissible details of the domestic A & B. The trial judge then gave instructions for the jury to disregard some of Ms. Farley's testimony." (Dkt. # 1 at 14). However, the record does not include any evidence of such an occurrence. Instead, the record demonstrates the State asked limited questions of Farley regarding the previous incident, and then moved immediately to questioning Farley about the arson.

impeach Brenda Farley, (2) investigate allegations made by Brenda Farley and other possible defense witnesses, (3) conduct an "independent test of the evidence liquid sample compared to Petitioner's coat," (4) call certain defense witnesses to testify, and (5) call Petitioner to testify.[6]  See id. at 16-24.  The OCCA cited Strickland v. Washington, 466 U.S. 687 (1984), and found Petitioner "failed to demonstrate either unreasonably deficient performance by his trial attorney, or that such allegedly deficient performance creates any reasonable probability of a different outcome at trial." (Dkt. # 8-4 at 5).  Respondent argues the OCCA's denial of Petitioner's claim was not contrary to, or an unreasonable application of, federal law as established by the Supreme Court.  (Dkt. # 8 at 13).

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of the claim was an unreasonable application of Strickland.  Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland, 466 U.S. at 687; see also Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  In deciding whether a defendant has made the required showing, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance."

---

[6]     Petitioner also raises two claims of ineffective assistance of counsel that he failed to present to the OCCA on direct appeal.  Petitioner claims counsel was ineffective for failing to (1) properly impeach Fire Investigator Jimmy Worley, and (2) call "alibi witness" James Thompson.  See Dkt. # 1 at 19-23.  As discussed in Part C, these claims are procedurally barred.

Id. at 688. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)). Petitioner bears the burden of demonstrating that the OCCA unreasonably applied Strickland.

### a.      Alleged failure to properly impeach Brenda Farley

Petitioner argues counsel's "failure to utilize available impeachment evidence was unreasonable under prevailing professional norms and was not sound strategy. Had these unprofessional errors not occured [sic], [there is] a reasonable probability the out [sic] would have been different." (Dkt. # 1 at 18). Specifically, Petitioner argues counsel failed to impeach Farley using "documented evidence that Ms. Farley had previously lied to police and falsified her statements in written police reports, that resulted [in] the arrest of the Petitioner, to be dismissed by

the District Attorney's [sic] office." Id. at 17. Petitioner asserts counsel's inadequate impeachment of Farley prejudiced his defense because "[t]he state's case hinged on the credibility of Ms. Farley's testimony, and how the jury believe her testimony [sic]." Id. Therefore, counsel's failure to effectively impeach Farley, Petitioner argues, "left Petitioner with little or no defense." Id. at 18.

The Tenth Circuit has repeatedly held that "decisions regarding how to best cross-examine witnesses presumptively arise from sound trial strategy." DeLozier v. Sirmons, 531 F.3d 1306, 1326 (10th Cir. 2008) (quoting Richie v. Mullin, 417 F.3d 1117, 1124 (10th Cir. 2005)). Petitioner has failed to show counsel's cross-examination of Farley was not based on sound trial strategy. Counsel did cross-examine Farley about several inconsistencies in her statements to police and her preliminary hearing testimony, including the time she spent with Petitioner at the Conoco gas station. See Dkt. # 9-7, Tr. Vol. III at 519-27. Counsel also asked Farley what she knew "about starting fires," and inquired if she set the fire that night. See id. at 542-43.

Counsel did not fail to impeach Farley, and in fact questioned Farley about several inconsistencies in her statement. Petitioner has failed to show both deficient performance and prejudice as required by Strickland. The OCCA's denial of Petitioner's claim was not contrary to, or an unreasonable application of, Strickland.

### b. Alleged failure to investigate

Petitioner argues counsel failed to investigate (1) Farley's allegation Petitioner was at her window the night of the arson and that she flagged down two police officers, (2) Petitioner's neighbors to inquire if they witnessed anything the night of the arson, and (3) other "possible exculpatory evidence." (Dkt. # 1 at 20). Petitioner argues these failures rendered counsel's

performance unreasonable and were "not sound trial strategy." Id. In support of his claim, Petitioner provides a letter from a woman who lived near the home where the arson occurred. (Dkt. # 2 at 12). In the letter, the woman states "I know I did not see you and Brenda arguing or Tulsa police on [the day of the arson]. I have not received any phone calls or written documentation of anyone trying to contact me regarding the fire." Id.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. The record demonstrates that counsel did conduct an investigation. At trial, witnesses Farley and Arthur Compos confirmed that counsel came to the home where the arson occurred, talked with them, and took "some pictures." See Dkt. # 9-6, Tr. Vol. II at 452; Dkt. # 9-7, Tr. Vol. III at 517. In addition, counsel called Carmen Ethridge as a witness; Ethridge was working at the Conoco gas station when Petitioner and Farley met there several hours before the fire. See Dkt. # 9-7, Tr. Vol. III at 602. Therefore, at some point prior to the trial, counsel located Ms. Ethridge as well. This is not a case where counsel failed to conduct an investigation.

Petitioner has failed to overcome the presumption that counsel's performance "falls within the wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689. In addition, Petitioner has failed to show the outcome of his trial would have been different had counsel investigated the issues identified by Petitioner. The OCCA's denial of this claim was not contrary to, or an unreasonable application of, Strickland.

  c. **Alleged failure to conduct an independent test comparing the liquid samples collected from Petitioner's clothing and the crime scene**

Petitioner asserts his counsel was ineffective for failing to conduct "an independant [sic] test of the evidence liquid sample compared to Petitioner's coat," and "secure expert forensic testimony to rebut the State's forensic expert test results." (Dkt. # 1 at 21). Petitioner argues he "advised counsel before trial that he had no contact with the alleged gas can from the [crime scene]." Id. Therefore, Petitioner alleges a test would have shown "the two gases [were] different types, pre-mix and plain unleaded gas," and that "[t]his exculpatory evidence would have rebutted [the] state's theory that the gas used in the arson which came from gas can which came from the garage was the same type found on Petitioners [sic] coat." Id.

In light of the evidence presented at trial, Petitioner fails to demonstrate a reasonable probability that, had counsel secured an expert to conduct such a test, the outcome of his trial would have been different. The fire investigator testified that the fire was incendiary and not accidental. See Dkt. # 9-5, Tr. Vol. I at 261. The Tulsa Police Department forensic scientist testified that analysis of the fire debris showed the presence of gasoline and a "medium range ignitable liquid." See Dkt. # 9-6, Tr. Vol. II at 388-90. While the evidence of gasoline found on Petitioner's coat was significant to the State's case, the jury heard the forensic chemist acknowledge, during cross examination, that the source of the gasoline found on Petitioner's coat could have been the Conoco gas station where Petitioner spent several hours prior to the arson. See id. at 407-08. Thus, the jury was aware of Petitioner's explanation for the presence of gasoline on his coat. In addition, the jury also heard additional evidence of Petitioner's guilt. Evidence at trial showed that the relationship between Petitioner and Farley had been violent. Approximately three months before the fire, after being arrested for domestic A & B, Petitioner threatened Farley, stating he would be "back to finish this." Id. at 438. The fire occurred within 24 hours of Petitioner's release from the Tulsa County

Jail after serving the sentence entered on the domestic A & B conviction. <u>See</u> Dkt. # 9-7, Tr. Vol. III at 484. In addition, Petitioner was present outside Farley's window only a few hours before the fire. Farley testified that a few hours before the arson occurred, after hearing a knock on her bedroom window, she observed Petitioner standing outside the window and attempted to call police using the home phone. <u>Id.</u> at 502-03. After discovering the phone was not working, Farley ran from the home, planning to use the phone at the Conoco gas station. <u>Id.</u> at 503. After stepping outside, Farley saw Petitioner standing in the street and heard him yell "what are you going to do now, bitch?" <u>Id.</u> at 502-03. The testimony of the other person inside the home that night, Arthur Compos, corroborated Farley's testimony that Petitioner was present outside the home preceding the fire. Compos testified that, while he did not see Petitioner outside the home, he heard Petitioner's voice. (Dkt. # 9-6, Tr. Vol. II at 443-44). He also testified the home phone stopped working at some point that night. <u>Id.</u> at 444-45. The Court finds that, in light of the evidence cited above, Petitioner has failed to show prejudice as required by <u>Strickland</u>. As a result, he has also filed to demonstrate that the OCCA's denial of relief on this claim was contrary to, or an unreasonable application of, <u>Strickland</u>.

### d. Alleged failure to call certain defense witnesses

Petitioner argues counsel was ineffective for failing to call the following witnesses at trial: James Threet, Tami Threet, Patricia Bernhardt, Will (last name unknown),[7] and James Thompson.[8]

---

[7] In Petitioner's supplemental pro se brief on direct appeal, Petitioner stated counsel talked to Will, but "failed to follow up and secure his testimony." (Dkt. # 8-2 at 7). To the extent Petitioner argues counsel was ineffective for failing to further investigate Will as a potential witness, Petitioner fails to show counsel's performance was ineffective. By Petitioner's own statement, it appears counsel did investigate Will as a possible witness. To the extent

(Dkt. # 1 at 22). Petitioner asserts these "witness'es [sic] would [have] strongly rebutted the state's theory[,] discredited Ms. Farley, and show Petitioner [was] actually innocene [sic] of arson." Id. However, in support of these claims, Petitioner provides nothing more than his own descriptions of the witnesses' prospective testimony.[9] The Tenth Circuit has held "[t]hese unsupported descriptions, which also fail to show that the uncalled witnesses would have testified at trial, are insufficient to show prejudice." United States v. Gallant, 562 F. App'x 712, 715 (10th Cir. 2014) (unpublished)[10] (citing Snow v. Sirmons, 474 F.3d 693, 730 n.42 (10th Cir. 2007) (to show prejudice, a petitioner "must show not only that the testimony of an uncalled witness would have been favorable, but also that the witness would have testified at trial")). Therefore, Petitioner has failed to show that the

---

Petitioner complains that counsel failed to "secure" Will's testimony, Petitioner has not demonstrated deficient performance because "[g]enerally, the decision whether to call a witness rests within the sound discretion of trial counsel." See Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998). Petitioner has failed to overcome the presumption that counsel's performance "falls within the range of reasonable assistance." Strickland, 466 U.S. at 688.

[8] Petitioner did not raise a claim relating to James Thompson until his second application for post-conviction relief. Therefore, as discussed in more detail in Part C, this claim is procedurally barred.

[9] In support of this claim, Petitioner provides affidavits and statements from some of these proposed witnesses. See Dkt. # 2 at 8-11. However, in resolving Petitioner's habeas corpus claims, this court's review is limited "to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). These affidavits and statements were not part of the direct appeal record presented to the OCCA when Petitioner's ineffective assistance of counsel claim was adjudicated on the merits. Based on Pinholster, this Court's review is limited to the record presented to the OCCA as part of the direct appeal. Thus, the Court may not consider the affidavits and statements filed in support of Petitioner's habeas petition.

[10] This and other unpublished court decisions herein are not precedential but are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

allegedly deficient performance was prejudicial. The OCCA's denial of Petitioner's claim was not

contrary to, or an unreasonable application of, Strickland.


      **e.**        **Alleged failure to call Petitioner to testify**

Finally, Petitioner claims "[he] was willing and adamant about giving his testimony at trial,

but with counsel's failure to call alibi defense witnesses, and to discredit Ms. Farley and on the

advise of counsel, Petitioner did not testify." (Dkt. # 1 at 23). Petitioner argues counsel was

"unprepared to put Petitioner on the stand." Id.

At trial, the following colloquy detailed Petitioner's decision not to testify in his own

defense:

| | |
|---|---|
| DEFENSE COUNSEL: | I've had discussions with my client whether he wants to testify or is willing to testify in this particular case, and I believe this is a proper time and a proper moment, since we are outside the presence of the jury, for the Court to make inquiry whether he wants to testify or whether he does not want to. |
| TRIAL COURT: | All right. Your attorney has indicated – well, actually he hasn't indicated to me what your decision is, so obviously it's your right, Mr. Threet, to testify, to take the stand or not. It's completely up to you. Nobody can compel you to do that. And I guess it's now the practice, because of some court decisions, to ask the Defendant on the record if you wish to testify or not . |
| PETITIONER: | I'm going to decline at this time, Your Honor, to testify. |
| DEFENSE COUNSEL: | And is it true, sir, that you have the right, till the close of trial, to testify if you still want to? |
| PETITIONER: | Yes. I want to reserve that right, if I change my mind, you know, at the end of the trial, to be able to testify, Your Honor. |

(Dkt. # 9-7, Tr. Vol. III at 585-86). The record reflects the trial judge clearly informed Petitioner he had the absolute right to testify, and Petitioner declined. During the colloquy detailed above, Petitioner did not express his concerns about his attorney's performance, or inform the trial judge he felt his right to testify was being violated. In addition, if counsel did advise Petitioner not to testify at trial, Petitioner has failed to show this advice from counsel was not based on sound trial strategy. Counsel knew the state would likely question Petitioner about the previous domestic A & B. Also, as Petitioner stated, he was a "convicted felon," and that would likely impact his credibility with the jury. See Dkt. # 1 at 23. Petitioner also fails to show the outcome of his trial would have been different had he testified in his own defense. Therefore, he cannot satisfy the prejudice prong of Strickland.

Petitioner has not demonstrated that the OCCA's resolution of his claims of ineffective assistance of counsel was contrary to, or an unreasonable application of, Strickland. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas corpus relief on Ground III.

### 4.     Alleged conflict of interest (Ground IV)

In Ground IV, Petitioner argues a "conflict of interest" existed between Petitioner and his trial counsel. (Dkt. # 1 at 27). Petitioner asserts "[c]onflict first arose when counsel advised Petitioner to take a plea bargain, and Petitioner refused." Id. Specifically, Petitioner claims counsel failed to respond to Petitioner's attempts to contact him, failed to file motions as requested by Petitioner, and failed to properly investigate Petitioner's case. Petitioner argues the district court's failure to inquire into a potential conflict "left Petitioner with counsel that refused to communicate with the client." Id. at 28. Before trial, Petitioner raised these complaints in a letter to the trial judge, and also filed a complaint with the Tulsa County Bar Association relating to trial counsel's

representation.[11]  (Dkt. # 2 at 34-38; Dkt, # 9-8, O.R. at 52-54).  The OCCA denied Petitioner's claim, holding,

> Appellant has not shown any reason why the district court should have inquired into a potential conflict of interest requiring the appointment of different trial counsel. It is apparent that the conflict between Appellant and his counsel was one of personality; and that any potential conflict did not adversely affect his attorney's performance at trial.

(Dkt. # 8-4 at 5).  Respondent argues the OCCA's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, federal law.  (Dkt. # 8 at 23-25).

"The Sixth Amendment right to effective assistance of counsel encompasses the correlative right to representation that is free from conflicts of interest." Hale v. Gibson, 227 F.3d 1298, 1312 (10th Cir. 2000) (quoting Selsor v. Kaiser, 81 F.3d 1492, 1496-97 (10th Cir. 1996)).  The Tenth Circuit has explained the "typical conflict of interest case giving rise to a claim of ineffective assistance of counsel involves multiple representation of co-defendants at a single trial." Id. (quoting United States v. Cook, 45 F.3d 388, 393 (10th Cir. 1995) (internal alterations omitted)).  In addition, "a conflict may also arise where a lawyer's self-interest is adverse to the interest of his client." Id.  To establish a conflict of interest, "the interest of counsel and defendant must be divergent in the current litigation, such that the attorney has an interest in the outcome of the particular case at issue that is adverse to that of the defendant." Id. at 1313.  Further, "a defendant who argues that an actual conflict prevented his attorney from providing effective assistance must

---

[11]   It does not appear Petitioner presented evidence to the OCCA in his supplemental direct appeal brief that he filed a bar complaint.  Therefore, pursuant to Pinholster, the Court may not consider the documents relating to Petitioner's bar complaint in resolving this claim on habeas review.

'show that his counsel *actively* represented conflicting interest.'" United States v. Soto Hernandez, 849 F.2d 1325, 1329 (10th Cir. 1988) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)).

After careful review of the record, the Court finds Petitioner has failed to demonstrate the OCCA's denial of his conflict of interest claim was contrary to, or an unreasonable application of, federal law. Although the record reflects that Petitioner was not pleased with his attorney, Petitioner has failed to point to facts showing that an actual conflict of interest adversely affected his lawyer's performance.

Additionally, to the extent Petitioner argues a complete breakdown in communication rendered counsel's performance ineffective, his claim shall be denied. The Sixth Amendment does not guarantee a "'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983). To prove a complete breakdown in communication, a petitioner "must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." United States v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002). Petitioner has failed to make this showing. Because Petitioner has failed to show the OCCA's denial of his claim was contrary to, or an unreasonable application of, federal law, his request for habeas relief on Ground IV shall be denied.

## C. Procedural Bar (Claims in Ground III and Grounds V & VI)

Within Ground III, as discussed above in Part B(3), Petitioner alleges his trial counsel was ineffective for failing to (1) properly impeach Investigator Worley, and (2) call alleged alibi witness James Thompson. (Dkt. # 1 at 19-20, 22-23). Petitioner first raised his claim relating to counsel's failure to call alibi witnesses, including Thompson, in his second application for post-conviction

relief. See Dkt. # 8-7 at 13-19. Petitioner has not presented his claim regarding counsel's failure to impeach Worley to the OCCA.

Petitioner raised Grounds V and VI in his second application for post-conviction relief. In Ground V, Petitioner argues "the OCCA's ruling denying relief [requested in Petitioner's first application for post-conviction relief] based on state procedural bar and not an adjudication of merits, was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." (Dkt. # 1 at 31). Petitioner further asserts that "if the state imposed impediments at the Oklahoma State Reformatory had not of been knowingly, willingly, and intentionally placed on him, Petitioner would have filed an appeal of the District Court's denial of his first appl. [sic] for post-conviction relief." Id. In Ground VI, Petitioner claims both his trial and appellate counsel were ineffective for failing to argue his original arrest was illegal. Id. at 35-38. The OCCA, in its order affirming the trial court's denial of Petitioner's second application for post-conviction relief, explained,

> Petitioner [ ] filed an Application for Post-Conviction Relief, but [the trial judge] denied that Application by judgment filed on August 23, 2011. Petitioner did not appeal, causing that judgment to become final.
>
> In Petitioner's Second Application for Post-Conviction Relief from which Petitioner now appeals, Petitioner listed three grounds that he believed demonstrated entitlement to post-conviction relief. Petitioner's "Ground 2" alleged that both Petitioner's trial and appellate counsel provided ineffective assistance in not raising a claim at trial or on appeal that Petitioner's arrest was unlawful. . . . Unless Petitioner, as required by [OKLA. STAT. tit. 22, § 1086 of] the Post-Conviction Procedure Act, can present a "sufficient reason" for not raising these latest claims in his first post-conviction application, they will be procedurally barred from being asserted in his subsequent application.
>
> "Ground 1" of Petitioner's Second Application contains the only matter offered by Petitioner as a possible reason for his failing to present his latest claims in his first post-conviction application. In "Ground 1," Petitioner indicated that he would have raised in his first application the above "Ground 2" and "Ground 3" but was prevented from doing so because the District Court made summary disposition of that first application and "did not allow for sufficient amount of time [for

Petitioner] to amend or reply" to the State's response to that first application. According to Petitioner, the District Court did so despite his having asked in that first application for leave to supplement due to "'impediment' imposed by the Oklahoma State Reformatory and Oklahoma Department of Corrections" that prevented the filing of a more complete application. Additionally, Petitioner's "Ground 1" argued that the District Court's summary disposition of his first application was "inappropriate and prejudicial" because the State failed to provide any records disproving Petitioner's claims when filing its response to Petitioner's first application.

This Court FINDS that Petitioner was required to have raised any procedural or substantive errors occurring in the disposition of his first post-conviction application through an appeal of the District Court's final judgment on that application. 22 O.S. 2011 § 1087. If Petitioner, as he alleges, asked the District Court for leave to supplement or amend his first application and the District Court denied or ignored that request, then it was incumbent on Petitioner to appeal that ruling. Once the District Court rendered judgment on the matters before it and the judgment became final for lack of appeal, principles of res judicata bared [sic] further litigation of those issues.

Consequently, Petitioner has not established a sufficient reason for his failing to raise his current post-conviction claims in his prior post-conviction proceeding; hence, the post-conviction claims advanced in his Second Application for Post-Conviction Relief are procedurally barred.

(Dkt. # 8-8 at 1-3) (footnotes omitted). Respondent asserts the "OCCA's bar of [Grounds V and VI] under its Rule 5.2(C)(5) or pursuant to Section 1086, is an independent and adequate state procedural ground foreclosing federal habeas review." (Dkt. # 8 at 32). Respondent asserts the Court should apply an anticipatory procedural bar to Petitioner's claim regarding counsel's failure to adequately impeach Worley. See id. at 25-29. Respondent addressed Petitioner's claim relating to Thompson on the merits. See id. at 20-21.

As a preliminary matter, to the extent Petitioner challenges Oklahoma's post-conviction procedure in Ground V, the Tenth Circuit Court of Appeals has consistently ruled that challenges to state post-conviction procedure do not rise to the level of federal constitutional claims cognizable on habeas corpus review. See Phillips v. Ferguson, 182 F.3d 769, 773-74 (10th Cir. 1999); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (when petitioner asserts no constitutional trial error,

but only error in the state post-conviction procedure, no relief can be granted in federal habeas corpus); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); Sawyer v. Smith, 497 U.S. 227 (1990). For that reason, habeas corpus relief on Petitioner's challenge to Oklahoma's post-conviction procedure, as raised in Ground V, is denied.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim that was resolved on an independent and adequate state procedural ground, unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly in the "vast majority" of cases. Id. at 986 (citing Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)).

Applying the principles of procedural default to these facts, the Court concludes that Grounds V and VI, and Petitioner's claim within Ground III relating to counsel's failure to call Thompson, are procedurally barred from this Court's review. The state court's procedural bar as applied to these claims was an independent ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." See id. at 985. The OCCA based its decision solely upon Oklahoma rules and case law, including OKLA. STAT. tit. 22, § 1086, and relied solely on state procedural grounds. In addition, the procedural bar applied by the OCCA was based on an adequate state ground. "[I]t has been stated clearly that section 1086 'strictly' prohibits raising issues that could have been raised before, even issues involving fundamental,

constitutional rights." Steele, 11 F.3d at 1522 (citing Johnson v. State, 823 P.2d 370, 372 (Okla. Crim. App. 1991)).  Additionally, with respect to Petitioner's ineffective assistance of counsel claims raised in Grounds III and VI, the Tenth Circuit has held that OKLA. STAT. tit. 22, § 1086, constitutes "an 'adequate' basis" for dismissing an ineffective assistance of counsel claim raised for the first time in a second post-conviction application as procedurally barred.  Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998).  Therefore, the procedural bar imposed by the OCCA on the claims raised in Grounds V, VI, and the Ground III claim of ineffective assistance of counsel first raised in the second application for post-conviction relief, were based on independent state law grounds adequate to preclude federal review.

In addition, as applied to the remaining claim within Ground III that Petitioner has not presented to the OCCA, if Petitioner were to return to state court to raise this claim in a third application for post-conviction relief, the claim would be procedurally barred.  An "'anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." Anderson v. Sirmons, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) (quoting Moore v. Schoeman, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002)).  Therefore, independent and adequate state procedural grounds would preclude federal review of this additional claim.

Because of the procedural bar applicable to Grounds V, VI, and the two identified claims within Ground III, this Court may not consider the claims unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered.  See Coleman, 501 U.S. at 750.  "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him . . . ."  Steele, 11 F.3d at 1522

(quoting Coleman, 501 U.S. at 753). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. See Murray v. Carrier, 477 U.S. 478, 488 (1986). As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). The "fundamental miscarriage of justice exception" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991); see also Steele, 11 F.3d at 1522. "Pro se litigants do not enjoy a more lenient standard," Frye v. Raemisch, 546 F. App'x 777, 785 (10th Cir. 2013) (unpublished) (citing Andrews v. Deland, 943 F.2d 1162, 1189 n.41 (10th Cir. 1991)), and a petitioner's status as a pro se prisoner does not constitute "cause" for the procedural default. Steele, 11 F.3d at 1522.

Petitioner argues he "diligently pursued the litigation at all stages of appeal" and, "had it not been for the impediments put before him Petitioner would have appealed the denial of his first post-conviction [application]." (Dkt. # 1 at 32). The "impediment," Petitioner argues, was the "continuous lock down" at Oklahoma State Reformatory. Petitioner asserts, due to the "lock down," he was denied access to the law library. Id. To support this argument, Petitioner provides several exhibits. See Dkt. # 2 at 40-45. The "Requests to Staff" provided by Petitioner confirm that, at various times, the Oklahoma State Reformatory was on "lock down," and at least at some point during the thirty (30) day period after the denial of Petitioner's first post-conviction application, the law library was closed.[12] See id. at 41-43. However, the prison staff member responding to

---

[12] Exhibits provided by Petitioner demonstrate that on September 2, 2011 the "law library [was] closed due to the lock down." See Dkt. # 2 at 43. Another correspondence also mentions the "lock down," but both fail to state how long the restriction lasted. Therefore, it is unclear how long the "lock down" period lasted, or how long the law library was closed.

Petitioner's request informed him that he could "request material to research in [his] cell." Id. at 43.

The prison staff member also noted that, because the law library was closed, law library personnel visited Petitioner in his unit at the prison to assist Petitioner with his legal filings. See id. at 44.

Petitioner confirms two law library personnel did in fact come to his prison unit to "speak with [him] concerning the deadline to file an appeal" during the relevant thirty (30) day period. Id. at 45.

Significantly, while Petitioner asserts the "lock down" made it "impossible to mail legal documents," none of the correspondence or evidence provided by Petitioner supports that assertion.[13]

And while it is true that, for some period of time, Petitioner was unable to personally visit the law library, the exhibits provided by Petitioner show he was provided access to legal resources.

Therefore, after careful review, the Court finds Petitioner has not shown "cause" for his state default.

Petitioner has failed to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753.

---

[13]    While Petitioner asserts it was "impossible" to mail legal documents during the thirty (30) day period after the trial court's denial of his first post-conviction application on August 23, 2011, Petitioner states he "did file a notice of appeal and designation of record in Aug[ust] of 2011, but lacking legal assistance from the law library 'due to lock down' Petitioner send [sic] documents to OCCA and not Tulsa County District Court." (Dkt. # 1 at 31). Petitioner notes he is unable to provide a copy of the notice of appeal due to his restricted law library access, but that "these documents should be of record with OCCA's clerk." Id. In affirming the denial of Petitioner's second application for post-conviction relief, the OCCA specifically noted that Petitioner did not appeal the denial of his first application for post-conviction relief. See Dkt. # 8-8 at 1. Thus, even if Petitioner mailed his notice of appeal and designation of record to the OCCA instead of Tulsa County District Court, he failed to perfect a post-conviction appeal in compliance with state procedural rules. In addition, Petitioner's averment that he mailed his notice of appeal to the wrong court casts doubt on Petitioner's assertion that the prison lock down made mailing legal documents "impossible." Moreover, as Petitioner's pro se status does not create a more lenient standard, even if Petitioner did file a notice of intent to appeal with the wrong court, this mistake does not constitute cause for the procedural default. See Coleman, 501 U.S. 722, 753 (1991) ("'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him") (internal citations omitted).

Petitioner has also failed to demonstrate that federal habeas review is required under the fundamental miscarriage of justice exception. "[T]he fundamental miscarriage of justice exception is an 'extremely narrow exception, implicated only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999) (quoting Ballinger v. Kerby, 3 F.3d 1371, 1375 (10th Cir. 1993). To establish a fundamental miscarriage of justice, a petitioner "must support his allegations of innocence with 'new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial.'" Cole v. New Mexico, 58 F. App'x 825, 830 (10th Cir. 2003) (unpublished) (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). Petitioner has failed to make this showing. Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claims are not considered, the Court concludes Grounds V, VI, and the two identified claims within Ground III, are procedurally barred from federal habeas review. See Coleman, 501 U.S. at 724. For that reason, Petitioner's request for habeas corpus relief on those grounds shall be denied.

## D.     Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner

can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. <u>See</u> <u>Dockins</u>, 374 F.3d at 938. As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.     The Court Clerk shall note on the record the substitution of Janet Dowling, Warden, in

       place of Tracy McCollum, Warden, as party respondent.

2.     The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.     A separate judgment in favor of Respondent shall be entered in this matter.

4.     A certificate of appealability is **denied**.

       **DATED** this 27th day of March, 2015.

                                        _____
                                        GREGORY K. FRIZZELL, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT